IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 25-cv-4029-WJM-STV

VICTOR GARCIA ABANIL,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden
of the Aurora Contract Detention Facility, *et al*.

    Respondents.

---

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Victor Garcia Abanil's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Respondents Juan Baltazar, in his official capacity as Warden of the Aurora Contract Detention Facility; Robert Hagan, in his official capacity as Field Office Director of the Denver Field Office of U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, in her official capacity as Attorney General of the United States, filed a response (ECF No. 9), to which Garcia Abanil filed a reply (ECF No. 10).

The Court heard oral argument on the Petition on January 13, 2026. (ECF No. 14.) It is now ripe for decision. For the reasons set forth below, the Petition is granted.

## I. BACKGROUND

### A.   Statutory Background

The Petition presents a dispute over the correct interpretation and application of two provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., pertaining to the detention of noncitizens prior to a final order of removal.[1]

First, 8 U.S.C. § 1125(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." (Emphasis added.) Section 1225(a)(1) in turn explains that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."

Second, 8 U.S.C. § 1126(a) provides that, "[o]n a warrant issued by the Attorney General, an alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States." (Emphasis added.)  With the exception of certain "criminal aliens," "[p]ending such decision, the Attorney General . . .(1) may continue to detain the arrested alien; and (2) may release the alien on . . . (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole."  8 U.S.C. § 1126(a).

The above-cited provisions were enacted as part of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208.  Before

---

[1] Under 8 C.F.R. § 1241.1, "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [u]pon dismissal of an appeal by the [BIA]."

2

the IIRIRA, the Attorney General's authority to detain noncitizens "[p]ending a determination of deportability" was embodied in 8 U.S.C. § 1252(a) (1994), which generally provided that, "in the discretion of the Attorney General," the noncitizen may "(A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole." When passing the IIRIRA, the House Committee on the Judiciary remarked that § 1226(a) simply "restates" former §1252(a)'s provisions "regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States."  House Rep. No. 104-469(I), at *239 (Mar. 4, 1996).

Soon after the enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") promulgated new regulations explaining that, "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination," as set forth in § 1226(a).  62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  There appears no genuine dispute in this case that, at least as a matter of practice, DHS has treated noncitizens *already present* in the United States as subject to *discretionary* detention under § 1226(a) for the last 20 or more years.

In July 2025, however, ICE issued new "Interim Guidance Regarding Detention Authority for Applicants for Admission."  (ECF No. 1 at ¶ 38–39.)  Though the parties have not submitted a copy of this guidance as part of the record in this case, Garcia Abanil alleges—and Respondents do not refute—that it "claims [] all persons who entered the United States without admission or parole," regardless of when they were

3

apprehended or how long they have resided in the United States, "shall now be deemed 'applicants for admission' under 8 U.S.C. § 1225, and therefore are subject to mandatory detention under § 1225(b)(2)(A)." (*Id.* at ¶ 39.) In September 2025, the Board of Immigration Appeals ("BIA") adopted a consistent interpretation in *Matter of Yajure Hurtado,* therein holding that, "under a plain language reading of . . . 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to aliens, . . . who are present in the United States without admission." 29 I&N Dec. 216, 225 (BIA 2025).

The Petition marks one of the many § 2241 actions—and, to a lesser extent, civil actions—that have been filed challenging Respondents' new policy and practice of detaining all noncitizens present in the United States who have not been admitted as subject to mandatory detention. Most notably, two federal judges—including U.S. District Judge Regina M. Rodriguez of this District—have conditionally certified class actions generally comprised of noncitizens newly subject to detention under § 1225(b)(2)(A) under ICE's new policy. *Mendoza Gutierrez v. Baltazar,* 2025 WL 3251143, at *1 (D. Colo. Nov. 21, 2025); *Bautista v. Noem,* -- F.R.D. --, 2025 WL 3288403, at *1 (C.D. Cal. Nov. 25, 2025). Those class certification decisions remain on appeal before the Ninth and Tenth Circuits.

B.    **Garcia Abanil's Detention and Removal Proceedings**

Garcia Abanil is a native and citizen of Mexico. (ECF No. 9 at 3.) He first entered the United States without inspection in 2010—over 15 years ago—and has resided here continuously since that time. (ECF No. 1 at ¶ 16, 22.) Garcia Abanil has never been admitted or paroled into the United States. (ECF No. 9 at 3.) However, his common-law wife and ten-year-old son—for whom Garcia Abanil avers he is the sole

4

financial provider—are U.S. citizens.  (*Id.* at ¶ 22.)

Respondents submit that, "in the course of their normal investigative duties, ICE officers routinely run checks of immigration and law enforcement records."  (ECF No. 9 at 3.)  In this case, ICE allegedly determined Garcia Abanil was "subject to removal" based on an August 2022 record of his arrest in Arizona for driving under the influence and possession or use of a narcotic drug in violation of state law.  (ECF No. 9 at 3.)

On July 2, 2025, DHS issued three documents initiating immigration proceedings against Garcia Abanil: (1) a "Notice to Appear" in removal proceedings; (2) a "Notice of Custody Determination," indicating that Garcia Abanil would be detained by DHS pending a final determination in his case pursuant to § 1226; and (3) a "Warrant for Arrest of Alien."  (ECF No. 1-1 at 1–9.)  ICE officers arrested and detained Garcia Abanil on the same date.  (ECF No. 1 at ¶ 23; ECF No. 9 at 3–4.)

Garcia Abanil appeared before an immigration judge ("IJ") for his initial hearing roughly two weeks later, on July 18, 2025.  (ECF No. 9 at 4.)  At that time, he admitted the allegations in the Notice to Appear and the IJ sustained the removal charge.  (*Id.*)  Less than a month later, Garcia Abanil filed an Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents with the EOIR.  (*Id.*)  An IJ denied his Application for Cancellation of Removal following a hearing on the merits on October 30, 2025.  (*Id.* at 5.)  Petitioner timely appealed the IJ's removal decision to the BIA in late November 2025.  (ECF No. 1 at ¶ 31.)

Concurrent with the merits of his removal proceedings, Garcia Abanil also moved, on September 5, 2025, for a custody redetermination hearing before an IJ.  (ECF No. 9 at 4.)  The IJ held that hearing on September 10, 2025 but ultimately denied

5

Garcia Abanil's request for a bond in a subsequent written order after concluding that—contrary to DHS's administrative documents—he was subject to detention under 8 U.S.C. § 1225, and it thus lacked jurisdiction to redetermine his custody status. (ECF No. 1 at ¶ 3; ECF No. 9 at 4.) Garcia Abanil appealed the IJ's bond decision to the BIA in late September. (ECF No. 9 at 5.) Moreover, after Judge Rodriguez granted the petitioner's request for a temporary restraining order ("TRO") in *Mendoza Gutierrez v. Baltazar,* 2025 WL 2962908, at *1 (D. Colo. Oct. 17, 2025), Garcia Abanil again moved the Immigration court for a custody redetermination on October 20, 2025. (ECF No. 1 at ¶ 27.) The IJ denied this request, too, reasoning that, because Judge Rodriguez had not yet certified a class in *Mendoza Gutierrez,* the relief afforded by the TRO entered in that case did not apply to him. (*Id.* at ¶ 28.)

As of the time of this Order, Garcia Abanil's appeals of the IJ's removal and custody decisions remain pending before the BIA, and he remains in custody at the Aurora Contract Detention Facility. (ECF No. 1 at ¶ 2; ECF No. 9 at 5.)

**C.    Habeas Action**

Garcia Abanil filed the Petition on December 16, 2025, therein asserting two claims: (1) that Respondents have violated the INA by subjecting him to detention under § 1225(b)(2)(A), rather than § 1226(a); and (2) that Respondents have violated his substantive due process rights by failing to provide him with a bond hearing. (ECF No. 1 at ¶¶ 59–65.) In terms of relief, Garcia Abanil asks the Court to issue a writ of habeas corpus (1) "clarifying that the statutory basis for [his] detention is 8 U.S.C. § 1226(a) and that 8 U.S.C. § 1225(b)(2)(A) does not apply to him;" and (2) "requiring that Respondents provide [him] with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 5 days." (ECF No. 1 at 15; *but see* ECF No. 10 at 8 (requesting that the Court order a

6

bond hearing to take place within 7 days).) Moreover, in his reply, Garcia Abanil also asks the Court to "find that the burden of proof at Garcia Abanil's bond hearing should rest with the Government." (ECF No. 10 at 12.)

The following day, the Court entered an Order directing Respondents to show cause why the Petition should not be granted by no later than December 30, 2025 and setting oral argument on the relief sought in the Petition on January 13, 2026. (ECF No. 6.) The Petition is now ripe for review.

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004). More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. U.S. Parole Com'n,* 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

As alluded to above, since *Yajure Hurtado,* many lawsuits have been filed challenging Respondents' recent practice of subjecting all noncitizen immigrants present in the United States to mandatory detention pursuant to § 1225(b)(2)(A). As in

7

many of those previously filed actions, Garcia Abanil alleges here that his continued detention under 1225(b)(2)(A) violates the INA, as well as his substantive due process rights. (ECF No. 1.) The Court analyzes each of these claims below. Ultimately, it joins the many federal courts across the country that have been faced with virtually identical challenges in concluding that Garcia Abanil is subject to detention only under § 1226(a)—not § 1225(b)(2)(A)—and his continued detention without an individualized custody determination accordingly violates his constitutional right to due process.

### A.    Statutory Interpretation

Garcia Abanil's first claim—that his detention pursuant to § 1225(b)(2)(A) violates the INA—presents a question of statutory interpretation: Even accepting that Garcia Abanil is an "applicant for admission," as that term is used in § 1225(a)(1), is he "seeking admission" such that he is subject to mandatory detention under §1225(b)(2)(A)? The Court concludes the answer to that question is "no."

"When interpreting the language of a statute, the starting point is always the language of the statute itself." *McGraw v. Barnhart,* 450 F.3d 493, 498 (10th Cir. 2006) (quoting *United States v. Quarrell,* 310 F.3d 664, 669 (10th Cir. 2002)). "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *Chickasaw Nation v. United States,* 208 F.3d 871, 876 (10th Cir. 2000).

To reiterate, § 1225(b)(2)(A) states, in pertinent part:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . .

As previewed above, the parties' briefing homes in on the meaning of the phrases "applicant for admission" and "seeking admission."

Respondents submit that § 1225(b)(2)(A) is a "catchall provision" that applies to all "applicant[s] for admission" not otherwise subject to the "expedited removal" provisions of § 1225(b)(1)—a category they contend captures Garcia Abanil as "an alien who . . . 'is present' in this country but 'has not been admitted.'" *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018) (quoting § 1225(a)(1)).  Garcia Abanil, for his part, does not meaningfully refute the contention that he is an "applicant for admission" but instead argues that, even if he is, § 1225(b)(2)(A) requires more.  In particular, Garcia Abanil asserts that, he must not only be an "applicant for admission," but he must also be actively "seeking admission" before § 1225(b)(2)(A)'s mandatory detention provision can apply to him.

The Court, like numerous other courts presented with this very same question of statutory interpretation, agrees with Garcia Abanil.  "The weight of authority interpreting § 1225 has recognized that 'for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Loa Caballero v. Baltazar,* 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (quoting *Martinez v. Hyde,* 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (internal citations omitted)).  Further examining the disputed meaning of "seeking admission," U.S. District Judge Nina Y. Wang of this District has explained that

> "[s]eeking" means "try[ing] to acquire or gain."  *Seeking*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking (last visited [Jan. 8, 2026]). And "admission" is defined in the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. §

9

> 1101(a)(13)(A).  [Thus,] [t]he plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States.

*Loa Caballero,* 2025 WL 2977650, at *6; *see also Lopez-Campos v. Raycraft,* 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025) (concluding that the phrase "seeking admission" "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection"); *Martinez,* 2025 WL 92084238, at *6 ("[T]he phrase 'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action.").

At bottom, "[n]oncitizens who are just 'present' in the country . . . , who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission." *Lopez-Campos,* 797 F. Supp. 3d at 781.  And "[a]s § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [persons who have] already been residing in the United States for several years." *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).  Put another way, noncitizens in Garcia Abanil's position, who entered the United States many years ago, are not "seeking admission" to the United States but are instead "seeking to *remain* in the United States." *Lepe v. Andrews,* -- F. Supp. 3d --, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *see also J.G.O. v. Francis,* 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025) ("'[S]eeking admission' requires an alien to *continue* to want to *go into* the country.  The problem, as [petitioner] points out, is that he's already here; you can't go into a place where you already are." (emphasis in original)).

While the Court could stop here, still other indicia bolster its plain text reading of

10

the statute. For one, Respondents' proffered interpretation of § 1225 appears facially inconsistent with related implementing regulations. Though, "[w]ith *Chevron* laid to rest," the Court must "follow the Supreme Court's charge to 'exercise independent judgment' in interpreting the relevant statutory language," *Rangel-Fuentes v. Bondi,* 155 F.4th 1138, 1143 (10th Cir. 2025) (internal citation omitted), courts may nonetheless "seek aid from the interpretations of those responsible for implementing particular statutes," *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 394 (2024). "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.*

As relevant here, the implementing regulation for § 1225(b) states that "any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235(c)(1) (emphasis added). In this way, "[t]he regulation appears to contemplate that applicants *seeking admission* are a subset of applicants 'roughly interchangeable' with 'arriving aliens.'" *Cordero Pelico v. Kaiser,* 2025 WL 2822876, at *11 (Oct. 3, 2025) (quoting *Martinez,* 2025 WL 2084238, at *6) (emphasis in original). An "arriving alien" is defined under the regulatory scheme as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. "This plainly does not describe petitioners," like Garcia Abanil, who already "reside in the United States." *Kaiser,* 2025 WL 28227876, at *11.

Further to the same point, in the Notice to Appear DHS issued commencing removal proceedings against Garcia Abanil, the issuing officer retained the option to

11

designate him as (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; or (3) a person who "ha[s] been admitted to the United States, but [is] removable for the reasons stated below." (ECF No. 1-1 at 3.)  In this case, the issuing officer chose the second—not the first—option to classify Garcia Abanil.

Even more explicitly, the Notice of Custody Determination issued concurrent with the Notice of Appear indicated that Garcia Abanil was being detained "[p]ursuant to the authority contained in section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act." (ECF No. 1-1 at 7.)  Though, as the Court acknowledged at oral argument, DHS's administrative documents may not be *determinative* of the legal issue presently before it, they nonetheless support the conclusion that Garcia Abanil "was not mandatorily detained as a noncitizen 'seeking admission' under § 1225(b), but rather as someone 'already in the country,' *Jennings,* 583 U.S. at 288–89, pursuant to Respondents' discretionary authority under § 1226(a)."  *Lopez Benitez,* 795 F. Supp. 3d at 486.

For at least the reasons stated herein, the Court joins its colleagues in this District and those courts across the country that have concluded Respondents' interpretation of § 1225(b)(2)(A) is contrary to the INA's plain text.  As a consequence, the Court also concludes that Garcia Abanil's detention pursuant to § 1225(b)(2)(A) violates the INA, and that he is instead properly considered to be detained under § 1226(a).

### B.     Substantive Due Process

Though the Court's finding of a statutory violation is alone sufficient to afford him the bond hearing he seeks, Garcia Abanil also claims, second, that has continued detention "without a bond redetermination hearing to determine whether he is a flight

risk or danger to others violates his right to due process." (ECF No. 1 at ¶ 65.)

At the outset, the Court must acknowledge that Garcia Abanil makes short shrift of his substantive due process claim in the Petition. Indeed, it is wholly unmentioned—much less analyzed—in the substantive "Argument" section of the Petition. Nevertheless, given that Respondents have fulsomely addressed Garcia Abanil's claim that his detention without a bond hearing violates his substantive due process rights in their response, in addition to the fact that the parties were given a further opportunity to expound on their arguments during the January 13, 2026 hearing, the Court, in its discretion, will fully consider Garcia Abanil's due process claim.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const., amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690. It is well-established that "the Due Process Clause applies to 'all persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

Here, the parties' arguments appear, at least implicitly, to acknowledge that Garcia Abanil's due process claim rises and falls with the Court's determination of whether he is detained pursuant to § 1225(b)(2)(A) or §1226(a). Respondents primarily argue that, "because Petitioner is subject to detention under 8 U.S.C. §1225(b)(2)(A), . . . he has received the due process that is set forth by statute." (ECF No. 9 at 15.) And Garcia Abanil argues that, "[b]ecause § 1226(a) governs [his] detention, the denial of any bond hearing constitutes an ongoing violation of . . . due process," inasmuch as "[§]

13

1226(a) contemplates discretionary detention accompanied by an individualized custody determination," and no such individualized custody determination has been afforded to him. (ECF No. 10 at 7.)

As concisely put by one district court,

> [b]ecause this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ. *See Lopez-Campos v. Raycraft,* -- F. Supp. 3d --, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025). Having erroneously concluded that Petitioner was mandatorily detained under §1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process. *See id.* at ----, 2025 WL 2496379, at *10; *Arostegui-Maldonado v. Baltazar,* 794 F. Supp. 3d 926, 941–43 (D. Colo. 2025); *Rodrigues De Oliveira v. Joyce,* 2025 WL 1826118, at *6 (D. Me. July 2, 2025).

*Velasquez Salazar v. Dedos,* -- F. Supp. 3d --, 2025 WL 2676729, at *5 (D.N.M. Sept. 17, 2025). The Court similarly concludes here that, because Garcia Abanil is statutorily entitled under § 1226 to more process than he has thus far received, his continued detention without an individualized bond hearing necessarily violates his Fifth Amendment right to due process. *Cf. Lopez Benitez,* 795 F. Supp. 3d at 495 (concluding, at least as it pertains to the first factor set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976), that "the facts clearly demonstrate[d] that [petitioner] was 'entitled to more process than he received' pursuant to § 1226(a) and its implementing regulations" and thus "a violation of [petitioner's] 'liberty interest is clearly established' here").

### C. Remedy

To remedy the statutory and constitutional violations identified above, Garcia

Abanil asks the Court to, "[i]ssue a writ of habeas corpus requiring that Respondents provide Garcia Abanil with a bond hearing pursuant to 8 U.S.C. § 1226(a) within" five or seven days.[2] (ECF No. 1 at 15; ECF No. 10 at 13.) On the limited record before it, the Court agrees that an IJ is better suited to consider whether Garcia Abanil poses a flight risk or danger to the community. *Cf. Loa Caballero,* 2025 WL 2977650, at *9; *Alvarez v. Noem,* 2025 WL 2942648, at *9 (W.D. Mich. Oct. 17, 2025). Accordingly, it will order a bond hearing to take place before an IJ within seven days of this Order.

As an additional matter, Garcia Abanil also asks the Court to "find that the burden of proof at Garcia Abanil's bond hearing should rest with the Government." (ECF No. 10 at 12.) Here again, the Court must acknowledge that Garcia Abanil raises this issue for the first time in his reply brief. To be sure, the Court takes a dim view of counsel's failure to develop these arguments properly in Garcia Abanil's initial briefing. Nonetheless, for similar reasons cited above—namely, that Respondents were afforded an opportunity to respond to Garcia Abanil's position regarding the burden of proof at the January 13, 2026 hearing—the Court will proceed to consider the issue.

Section 1226(a) and its implementing regulations are silent as to whether the applicant or the Government carries the burden of proof at a bond hearing. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(d). Moreover, the Tenth Circuit has not spoken on the issue, and other Circuit Courts of Appeal remain divided. *See Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1203–05 (9th Cir. 2022) (discussing Circuit split). Garcia Abanil submits that the Court may nonetheless assess whether it is appropriate to shift

---

[2] The Petition asks the Court to order a bond hearing within 5 days, while Garcia Abanil's reply brief asks the Court to order a bond hearing to take place within 7 days.

15

the burden of proof to the Government in this case under either (1) the *Mathews* framework, as exemplified in *L.G. v. Choate,* 744 F. Supp. 3d 1172 (D. Colo. 2024); (2) or the framework applicable to involuntary civil detainees awaiting trial or mental health treatment, as applied in *Diaz-Ceja v. McAleenan,* 2019 WL 2774211 (D. Colo. 2019). (ECF No. 10 at 9.)

While the Court appreciates the parties' detailed discussions of these analytical frameworks in their briefing and at oral argument, in its view, the weight of authority in this District is clear: it is the Government's burden to "justify[] a noncitizen's continued detention at a bond hearing." *Arauz v. Baltazar,* 2025 WL 3041840, at *4 n.3 (D. Colo. Oct. 31, 2025); *see also Espinoza Ruiz v. Baltazar,* 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025) (ordering that the Government would carry the burden for bond hearing under §1226(a)); *Loa Caballero,* 2025 WL 2977650, at *9 ("During such [§ 1226(a) hearing, the Respondents bear the burden of justifying detention."); *Mendoza Gutierrez,* 2025 WL 2962908, at *14 ("the Government shall bear the burden of justifying [detention] by clear and convincing evidence of dangerousness of risk of flight"); *Garcia Cortes v. Noem,* 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (same).

Indeed, as this Court recently observed in *Arostegui-Maldonado,*

> As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake. *See, e.g., United States v. Salerno,* 481 U.S. 739, 751 (1987) (noting that pretrial detention is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). The Court sees no compelling reason why a lesser standard should apply in this context. *See Addington v. Texas,* 441 U.S. 418, 425 (1983) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty

16

> that requires due process protection"); *see also id.* at 432 (in ultimately concluding the "clear, unequivocal and convincing evidence" standard should govern the decision to involuntary commit someone, noting the Court's earlier decisions adopting that evidentiary standard in cases "dealing with deportation" and "denaturalization" (internal citations omitted)).

794 F.3d at 944. This rationale applies with equal force in this case, where Garcia Abanil's liberty interest hangs in the balance.

In sum, Respondents shall provide Garcia Abanil with a bond hearing under § 1226(a) within seven days of this Order, at which the Government shall bear the burden of justifying Garcia Abanil's continued detention by clear and convincing evidence of his dangerousness to the safety of the community, or of his risk of flight.

### IV. CONCLUSION

For all the reasons set forth above, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 6) is MADE ABSOLUTE and Petitioner Victor Garcia Abanil's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2. Within **seven days** of this Order, Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a);

3. At the bond hearing, the Government shall bear the burden to justify Petitioner's continued detention by clear and convincing evidence;

4. Petitioner shall have his costs in compliance with D.C.COLO.LCivR 54.1;

5. Should Petitioner believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, *see Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025), he is GRANTED leave to file a motion seeking same, along with all supporting documentation, by no later than **February 4, 2026**. Respondents shall file a

17

response by no later than **February 18, 2026**, and Petitioner shall file a reply by no later than **February 25, 2026**; and

6.     Judgment shall enter in Petitioner's favor and against Respondents on **January 28, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 14th day of January, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge