**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 25-cv-4029-WJM-STV

VICTOR GARCIA ABANIL,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden
of the Aurora Contract Detention Facility, *et al*.

     Respondents.

---

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR ATTORNEY'S FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

---

Before the Court is Petitioner Victor Garcia Abanil's Motion for Attorney's Fees Pursuant to the Equal Access to Justice Act (the "Motion").  (ECF No. 18.) Respondents Juan Baltazar, in his official capacity as Warden of the Aurora Contract Detention Facility; Robert Hagan, in his official capacity as Field Office Director of the Denver Field Office of U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Acting Director of ICE; Markwayne Mullin,[1] in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche,[2] in his official capacity as Acting Attorney General of the United States, filed a response (ECF No. 22), to which Garcia Abanil filed a reply (ECF No. 23).

For the reasons set forth below, the Motion is granted in part and denied in part.

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of the United States Department of Homeland Security.

[2] Todd Blanche replaced Pamela Bondi as Acting Attorney General of the United States.

## I. BACKGROUND

In December 2025, Garcia Abanil filed a Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241 challenging the legality of his continued detention under 8 U.S.C. § 1225(b)(2)(A) under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.  (ECF No. 1.)  After holding oral argument, the Court granted the Petition and ordered Respondents to provide Garcia Abanil with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days, at which the Government would bear the burden to justify his continued detention by clear and convincing evidence.  (ECF No. 16 at 17.)  By the same Order, the Court also granted Garcia Abanil leave to file a motion for attorney's fees to the extent he believed he had a good faith basis to seek them under the Equal Access to Justice Act ("EAJA").  (*Id.* at 17–18.)  Shortly after final judgment entered in Garcia Abanil's favor, (ECF No. 17), he timely filed the Motion, seeking $6,504.00 in attorney's fees incurred litigating the Petition under the EAJA.  (ECF No. 18.)

## II. ANALYSIS

### A.    EAJA's Substantive Requisites

Under the EAJA, "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A); *see also Daley v. Ceja,* 158 F.4th 1152, 1166 (10th Cir. 2025) (As used in the EAJA, "[t]he term 'any civil action' refers to civil actions of 'whatever kind,'" including "immigration habeas actions.").  Said another way, a fee award is required under the EAJA "if (1) the petitioner is a 'prevailing party'; (2) the position of the United States was

2

not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Morales Lopez v. Baltazar, et al.,* --- F. Supp. 3d ---, 2026 WL 1587510, at *5 (D. Colo. May 29, 2026).

Here, the Government argues Garcia Abanil's attorney's fees are not awardable under the EAJA only on the basis that "Respondents' position—that Petitioner was subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore not entitled to a bond hearing—was substantially justified at the outset and throughout the course of the litigation." (ECF No. 22 at 3.)  The Court limits its analysis accordingly.  For the reasons explained below, it disagrees with the Government.

The Government bears the burden of showing that its legal position was substantially justified.  *See Gilbert v. Shalala,* 45 F.3d 1391, 1394 (10th Cir.1995).  To determine whether the government's position was substantially justified, courts must look at the "totality of the circumstances, as reflected in the record before the court." *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480, 485 (10th Cir. 1987).  "While the parties' postures on individual matters may be more or less justified," courts should treat the case "as an inclusive whole, rather than atomized line-items." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990).  "The test for substantial justification in this circuit is one of reasonableness in law and fact."  *Gilbert,* 45 F.3d at 1394.  Thus, the Government's position must be "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  The Government's "position can be justified even though it is not correct."  *Id.* at 566 n.2. Additionally, the Government's prelitigation actions and litigation position "are both

relevant to the inquiry and must be reasonable in fact and law." *Al-Maleki v. Holder*,

558 F.3d 1200, 1207 (10th Cir. 2009) (citation omitted).

Applying these principles, the Court concludes that the Government has failed to

show that its position in this case—that section 1225(b), not section 1226(a), governed

Garcia Abanil's detention—was substantially justified. As the Court recently explained

in an identical posture,

> [t]he Government's position is not substantially justified principally because it is based on an abrupt, "revised" interpretation of the relevant sections of the INA in July 2025, seemingly in an effort to accomplish the current administration's policy objectives—namely, meeting mass deportation quotas. *See* Memorandum from Rodney S. Scott, Comm'r of U.S. Customs & Border Prot., Detention of Applicants for Admission (July 10, 2025) (https://www.cbp.gov/document/foia-record/detention-applicants-admission) [https://perma.cc/56W9-TNPW] ("revising" DHS's legal position from its "historical" treatment of certain noncitizens); *see also Arias v. Noem*, 818 F. Supp. 3d 864, 865 (W.D. Tex. 2026) (observing that the current administration has "daily deportation quotas," and describing them as "ill-conceived and incompetently-implemented").
>
> "This 'new understanding' of a decades-old statute has resulted in the government detaining hundreds of thousands of nonviolent individuals, often without due process or other constitutional protections." *Salazar v. Noem*, 2026 WL 594606, at *1 (D. Neb. Mar. 3, 2026). And, in turn, the Government's reckless mass detention campaign has resulted in these individuals being forced to file thousands of habeas corpus petitions in federal courts across the country, dramatically increasing the already over-burdened caseloads of federal district and circuit courts across the land. *See id.* ("It has also sparked *thousands* of lawsuits where courts have ordered release of those wrongfully detained, for which neither immigration courts nor the Department of Justice have seemed prepared."); *see also Coronado v. Sec'y, DHS*, 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025) (noting that, as of December 2025, "district courts have issued more than 700 decisions addressing the topic"); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026) (noting

4

that, as of February 2026, "well over a thousand aliens have
filed habeas corpus petitions seeking bond hearings").

*Morales Lopez,* 2026 WL 1587510, at \*5–6.

Nevertheless, the Government argues that its position must be substantially
justified given its position on the interpretation of § 1225 has "satisfied many judges in
district courts across the country and [one] court of appeals." (ECF No. 22 at 4.) But as
the Court has previously explained, this contrary

> authority does not foreclose its holding that the
> Government's position lacks substantial justification. True,
> as discussed, there is disagreement among the federal
> courts as to whether mandatory detention is appropriate for
> certain noncitizens under 8 U.S.C. § 1225(b)(2)(A). Upon
> further inspection, however, it is clear that the disagreement
> is not remotely balanced on a numerical basis. According to
> one district court, for example, as of late 2025 an
> overwhelming majority of district courts had concluded that
> section 1225(b) does not govern on these facts. *See Barco
> Mercado v. Francis*, 2025 WL 3295903, at \*13 (S.D.N.Y.
> Nov. 26, 2025) (collecting 362 district court opinions
> nationwide and noting that challengers prevailed in at least
> 350 of them, in decisions by over 160 judges across
> fifty courts).
>
> And more recently, one source has reported that, of the
> roughly 12,000 federal district court cases around the
> country to have addressed the mandatory detention issue,
> roughly 10,800 decisions have found in favor of the
> immigrant, whereas only roughly 1,300 decisions have found
> in favor of the Government. Kyle Cheney & Jessie Blaser,
> *Explore the data: 10,000 rulings against Trump in ICE cases*,
> POLITICO (last accessed on May 19, 2026),
> https://www.politico.com/news/2026/05/13/mandatory-
> detention-ice-cases-rulings-database-00913988. Of those
> 10,800 decisions in the immigrant's favor, approximately
> 7,300 of them were based on the conclusion that section
> 1225 does not apply to migrants like Morales Lopez. *Id.*
>
> These data confirm the following: The Government's
> statutory interpretation of section 1225(b) has been rejected
> by a vast, overwhelming majority of federal district judges

across the country.[3]  *See Fermenar-Mast v. Jamison*, 2026 WL 1365013, at *2 (E.D. Pa. May 15, 2026) ("While none of the foregoing appellate authority is binding on this Court, the decisions in *Barbosa da Cunha, Lopez Campos*, and *Fidencio Alvarez* align with this Court's analysis in *Ndiaye* and with over 10,000 decisions of over 424 district judges across the nation who, as of May 13, 2026, have also rejected the government's position."); *see also Barbosa da Cuhna*, 2026 WL 1145044, at *21 (noting that "over 370 different judges across the Nation have rejected the government's plain text argument—such that we could not consider the long-standing agency practice that contradicts the government's position").

Moreover, until very recently, the Government's position enjoyed no support from any of the Judges in this District. *See, e.g., Mendoza Gutierrez v. Baltasar*, 2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Loa Caballero v. Baltazar*, 2025 WL 2977650, at *5 (D. Colo. Oct. 22, 2025) (Wang, J.); *Nava Hernandez v. Baltazar*, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Arredondo v. Baltazar*, 2025 WL 4083607 (D. Colo. Oct. 31, 2025) (Jackson, J.); *Florez Marin v. Baltazar*, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, J.); *Aleman Hernandez v. Baltazar*, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148 (D. Colo. 2026) (Martínez, J.); *but see Singh*, 2026 WL 1282828 (Domenico, C.J.).  All this supports the conclusion that the Government's position on the application of section 1225 in these circumstances lacks merit.

*Morales Lopez,* 2026 WL 1587510, at *7–*8.

As a final point, the Court notes that, while the Fifth Circuit may have adopted the Government's view, the Second Circuit was decidedly unpersuaded by it.  *See Barbosa da Cunha v. Freden*, — F.4th —, 2026 WL 1146044, at *19 (2d Cir. Apr. 28, 2026);

---

[3] Indeed, the Government acknowledges its "arguments have been rejected by a large majority of federal district courts . . . ."  (ECF No. 22 at 4.)

6

*contra Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026).  Indeed, the

Second Circuit

> reasoned that "the only coherent interpretation of Section
> 1225(b)(2)(B)(iii) is that it clarifies that Section
> 1225(b)(2)(A)'s broad referral of noncitizens to full removal
> proceedings under Section 1229a does not apply to
> stowaways."  *Id.* at \*13.  As to the statute's context, the
> Second Circuit explained that "Petitioner's interpretation of
> 'seeking admission' under Section 1225(b)(2)(A) is
> completely consistent with the consideration of that provision
> in the overall structure and context of the detention
> framework set forth in the statutory scheme.'"  *Id.* at \*16.
> And as to the history and purpose of the statute, the Second
> Circuited declared that the Government's position "casts
> aside" and "undermines the very purpose that it purports to
> advance—treating similarly situated noncitizens alike."  *Id.* at
> \*18, 19.

*Morales Lopez,* 2026 WL 1587510, at \*8.

The Court reiterates its strong agreement "with the thorough and exacting

analysis by the *Cunha* panel of the section 1225 issue and, as a result, holds that the

Government's overall position in this case—including its position prior to the

commencement of litigation—lacks substantial justification."  *Id.* at \*9.  As such, the

Court finds and concludes that attorney fees under EAJA are available to Garcia Abanil.

**B.    Fee Amount**

Having concluded that Garcia Abanil is entitled to an award of fees under the

EAJA, the Court considers the appropriate fee amount.

The EAJA permits an eligible prevailing party to recover "*reasonable* attorney

fees."  28 U.S.C. § 2142(d)(2)(A) (emphasis added).  "The initial estimate of a

reasonable attorney's fee is properly calculated by multiplying the number of hours

reasonably expended on the litigation times a reasonable hourly rate," also called a

lodestar calculation.  *Taylor v. Colvin*, 2015 WL 2375907, at \*2 (D. Colo. 2015)*; see also*

7

*Scherffius v. Astrue,* 296 F. App'x 616, 619 (10th Cir. 2008).  The party seeking the

award bears the burden of persuading the Court that the amount is reasonable.  *Taylor,*

2015 WL 2375907, at *2.  But the determination of attorney's fees is ultimately

discretionary, especially given the district court's close understanding of the litigation

and desire to avoid frequent appellate review of factual matters.  *Rocky Mountain Wild*

*v. Vilsack*, No. 09-cv-01272-WJM, 2013 WL 3233573 at *4 (D. Colo. 2013).

As noted above, Garcia Abanil requests that the Court award him $6,504.000 in

attorney's fees for the 25 hours of work his counsel expended litigating the Petition at a

rate of $260.16 per hour.  As a threshold matter, attorney's fees under the EAJA

ordinarily "shall not be awarded in excess of $125 per hour unless the court determines

that an increase in the cost of living or a special factor, such as the limited availability of

qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C.

§ 2412(d)(2)(A).  But the Court need not analyze whether Garcia Abanil is entitled to a

departure from the statutory cap because the Government does not contest the cost-of-

living-adjusted $260.16 hourly billing rate sought by Garcia Abanil.[4]  It has thus waived

any challenge to that issue.  *Otte v. Berryhill*, 2018 WL 5263515, at *5 (D. Kan. Oct. 23,

2018).

The Government does, however, challenge the reasonableness of the total

number of hours his counsel expended litigating the Petition.  Specifically, it argues that

"all 25 of the hours requested by Petitioner should be subject to a percentage reduction"

of 15% "due to Petitioner's counsel's billing in half-hour increments."  (ECF No. 22 at 6.)

---

[4] Were the Court to substantively analyze this issue, however, it would conclude that an upward departure of this magnitude in the hourly rate is necessary in this case.

The Court concurs with the Government's observation that all of the time entries on counsel's billing records are recorded in whole or half-hour increments.  (*See* ECF No. 18 at 18.)  The Court further agrees with the Government that counsel's practice of recording her billable hours in this manner makes it difficult for the Court to assess whether the amount of time she expended on any given task was reasonable.  *Cf. Johnson v. City of Tulsa,* 2003 WL 24015152, at *3 (N.D. Okla. Aug. 29, 2003) ("[B]y billing in quarter-hour increments instead of the one-tenth hour increments usually seen by the Court in fee applications, an added measure of uncertainty exists on the question of whether each and every hour recorded was in fact reasonably expended.").  Accordingly, it also agrees with the Government that a modest reduction is warranted.

The Government asks the Court to reduce the recoverable billable hours to 15%. It directs the Court to the decisions of several other courts that have found percentage reductions ranging from 5 to 20% to be appropriate under similar circumstances.  *See Zucker v. Occidental Petroleum Corp.,* 968 F. Supp. 1396, 1403 (C.D. Cal. 1997) (5% reduction); *Johnson,* 2003 WL 24015152, at *4 (7% reduction); *Neil v. Comm'r of Soc. Sec.,* 495 F. App'x 845, at *2 (9th Cir. 2012) (affirming 10% reduction); *Swisher v. United States,* 262 F. Supp. 2d 1203, 1216 (D. Kan. 2003) (12.5% reduction).

Given the relatively few time entries at issue here (a mere one page of billing records), the Court finds a 10% reduction is sufficient to redress counsel's practice of billing in quarter- or half-hour increments.  Thus, Garcia Abanil shall be entitled to his attorney's fees in the amount of **$5,853.60** ($6,504.00 less 10%).

9

## III. CONCLUSION

For all the reasons set forth above, the Court ORDERS as follows:

1.      Petitioner's Motion for Attorney's Fees Pursuant to the Equal Access to

Justic Act (ECF No. 18) is GRANTED IN PART and DENIED IN PART;

2.      Garcia Abanil is AWARDED attorney's fees under the EAJA in the total

amount of **$5,853.60**; and

3.      The Government is ORDERED to make such payment in full to Garcia

Abanil by no later than **July 16, 2026**.


Dated this 18th day of June, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge